AO 106 (Rev. 04/010) Application for Search Warrant | AUTHORIZED AND APPROVED/DATE: TE 10.10.2025

# UNITED STATES DISTRICT COURT
for the
WESTERN DISTRICT OF OKLAHOMA

In the Matter of the Search of )
)
White 2004 Chevrolet Tahoe, )  Case No: MJ-25-602-CMS
VIN 1GNEK13T64J198635, )
License Plate CN57438 )

## APPLICATION FOR SEARCH WARRANT

I, a federal law enforcement officer or attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following property:
See Attachment A, which is attached and incorporated by reference.

Located in the Western District of Oklahoma, there is now concealed:
See Attachment B, which is attached and incorporated by reference.

The basis for the search under Fed. R. Crim.P.41(c) is *(check one or more)*:
☒ evidence of the crime;
☒ contraband, fruits of crime, or other items illegally possessed;
☒ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
| --- | --- |
| 18 U.S.C. §§ 1153 and 1111 | Murder |
| 18 U.S.C. §§ 1153 and 1112 | Manslaughter |
| 18 U.S.C. §§ 1152 and 13 and 21 O.S. § 1161 | Unauthorized Removal of a Dead Body |

The application is based on these facts:

See attached Affidavit of Special Agent Valoree Martinez, Oklahoma State Bureau of Investigation, which is incorporated by reference herein.

☒ Continued on the attached sheet(s).
☐ Delayed notice of [No. of Days] days *(give exact ending date if more than 30 days)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet(s).

*Applicant's signature*

Valoree Martinez
Special Agent
Oklahoma State Bureau of Investigation

Sworn to before me and signed in my presence.

Date: October 14, 2025

*Judge's signature*

City and State: Oklahoma City, Oklahoma

CHRIS M. STEPHENS, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT

I, Valoree Martinez, a Special Agent with the Oklahoma State Bureau of Investigation (OSBI), and a Special Deputy U.S. Marshal on the Federal Bureau of Investigation Safe Trails Task Force, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. Your Affiant is Valoree Martinez, a certified and commissioned police officer in and for the State of Oklahoma, and is currently employed as a Special Agent for the Oklahoma State Bureau of Investigation (OSBI). Your Affiant was previously employed by the Department of Corrections Probation and Parole Office. Your Affiant's training and education have included a Bachelor's Degree in Criminal Justice from Ashford University, OSBI Agent's Academy, and the State of Oklahoma Basic Peace Officer Academy. Your Affiant is also a Special Deputy U.S. Marshal on the Federal Bureau of Investigation Safe Trails Task Force.

2. As a Special Deputy with the FBI Safe Trails Task Force, I am authorized to investigate violations of the laws of the United States that occur in Indian Country, including violations of Title 18 of the United States Code and to execute warrants issued under the authority of the United States.

3. The information contained in this Affidavit is based upon my personal knowledge and observation, my training and experience, conversations with other law enforcement officers and witnesses, and review of documents and records. This Affidavit is made in support of an application for a warrant to search a certain white 2004 Chevrolet Tahoe, bearing Chickasaw Nation license plate CN57438 and Vehicle Identification Number 1GNEK13T64J198635 (**"Subject Vehicle"**), owned by Lauren Lewis, located at the Weatherford Police Department, 615 East Franklin Avenue, Weatherford, Custer County, Oklahoma. The **Subject Vehicle** is described

in detail in Attachment A to this Affidavit, is located in the #4 Sally Port on the northeast corner of the Weatherford Police Department. Custer County is in the Western District of Oklahoma.

4. This investigation, described more fully below, has established probable cause to believe that Chickasaw Nation Member CAMERON MATTHEW LEWIS, and potentially others, violated Title 18, United States Code, Sections 1153 and 1111 (Murder); Title 18, United States Code, Sections 1153 and 1112 (Manslaughter); and/or Title 18, United States Code, Section 1152 and Title 21, Oklahoma Statutes, Section 1161 (Unauthorized Removal of a Dead Body), and there is probable cause to believe that evidence, fruits, and instrumentalities of such violations are located in the **Subject Vehicle**.

5. Since this Affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me regarding this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to support the issuance of a search warrant.

## JURISDICTION

6. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711 and 18 U.S.C. §§ 2703(a), (b)(1)(A), and (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

**Discovery of the Crime:**

7. On October 5, 2025, Southwestern Oklahoma State University (SWOSU) Assistant Chief Blake Powers requested OSBI investigative assistance with a missing person. On September 30, 2025, Erin Musil reported her son, SWOSU student L.M., was missing. Erin had not spoken

to L.M. since approximately September 11, 2025.

8. On October 1, 2025, SWOSU Police Department conducted a welfare check at L.M.'s dorm room and found it empty. The light in the room was on.

9. SWOSU Police conducted additional welfare checks in the following days and could not locate L.M. Through investigation, it was learned that the last location L.M.'s phone was used was in Purcell, Oklahoma. L.M.'s phone was powered off at some point after September 12, 2025. L.M.'s gaming chair and a keyboard were missing from his dorm room.

10. It was learned through additional investigation that the last activity on L.M.'s phone was Google searches for "Wellston, Oklahoma" and "Channel 9 Weather." The IP address from which the searches originated was 69.66.161.11, which was found to be a Windstream Services, LLC, IP address. Further investigation showed that the subscriber of that IP address was Michael Lewis of 417 West Van Buren Street, Purcell, Oklahoma. An alternate phone number for the Windstream Account returned to Lauren Lewis (a/k/a Lauren Jones), Michael's wife.

11. An OSBI analyst was able to determine that Michael and Lauren's son was CAMERON MATTHEW LEWIS ("LEWIS"). LEWIS was found to be a student at SWOSU who lived in a dorm room near L.M.

12. OSBI agents and SWOSU police attempted to locate LEWIS on October 6, 2025. During that time, SWOSU police observed an orange and black gaming chair in LEWIS's dorm room. The chair was similar to L.M.'s missing gaming chair.

**Interview of CAMERON LEWIS:**

13. On October 6, 2025, OSBI Special Agents Matthew Wallace and Ryan Beck interviewed LEWIS at the OSBI Weatherford field office.

14. LEWIS stated that he first met L.M. on September 11, 2025. LEWIS and L.M.

shared an interest in skateboarding. LEWIS initially stated that neither he nor his roommate had a gaming chair in their dorm room. Later during the interview, LEWIS stated that the gaming chair in his room was L.M.'s, and that L.M. brought it over on September 11 or September 12, 2025, to sit in while playing LEWIS's PlayStation.

15. On September 12, 2025, LEWIS invited L.M. to Purcell to stay the night and go skating. LEWIS and L.M. left SWOSU in **Subject Vehicle** at approximately 1230 hours on September 12, 2025 and arrived in Purcell later that same day. L.M. took a large black tote with clothing he planned to wash at LEWIS's parent's house. LEWIS also stated that L.M. had a skateboard and white drawstring backpack with a wallet and cellphone inside. None of the items L.M. was last seen with have been found.

16. LEWIS further stated that he and L.M. arrived at his parents' home in Purcell at approximately 1430 hours. LEWIS introduced L.M. to his family. LEWIS then left his parents' house to go to his girlfriend's house, leaving L.M. behind. Michael and Lauren later called LEWIS and asked him to come back home because they did not want L.M. there without LEWIS.

17. LEWIS returned to his parents' house. LEWIS and L.M. then went to a marijuana dispensary in Norman. LEWIS, who had a medical marijuana card, bought marijuana for LEWIS and L.M. to share. After smoking marijuana, LEWIS and L.M. went to a skate park in Norman. After about 45 minutes of skating, LEWIS injured himself. LEWIS and L.M. went to Braum's in Norman to get food, then returned to Purcell.

18. LEWIS stayed in the trailer behind at his parents' house when he was home from college. LEWIS, L.M., and LEWIS's 17-year-old brother, B.L., were in the trailer when LEWIS and L.M. returned from Norman. LEWIS and B.L. went to sleep while L.M. stayed up to play video games on LEWIS's PlayStation. Two or three times during the night, L.M. woke LEWIS

4

and B.L. up by screaming at the game.

19.     LEWIS and B.L. became frustrated and LEWIS told L.M. that he had to leave. LEWIS said he would drop L.M. off at his mother's house. L.M., who did not have cell service, connected his phone to LEWIS's mobile hotspot. L.M. typed an Edmond address into L.M.'s phone. LEWIS stated he drove L.M. to the Edmond address, which LEWIS described as in the area of 2nd and Coltrane in Edmond. The house LEWIS stated he dropped L.M. off at was a two-story house with a chain link fence and a white four-door car out front.

20.     According to LEWIS, L.M. took his property out of LEWIS's vehicle then walked to the door of the house. LEWIS did not see L.M. enter the house. LEWIS then used his own phone to search for directions back to Purcell. LEWIS confirmed that the phone said his starting point was in Edmond.

21.     LEWIS initially denied that he physically fought with L.M. Later in the interview, LEWIS admitted that they had a fight that was physical, and that L.M. had scratched him with a stick while LEWIS held L.M. to the ground. When confronted, LEWIS further admitted that while they were in Norman, he and L.M. used "mushrooms" to get high. The mushrooms made LEWIS forget somethings and made him drowsy. During the fight with L.M., LEWIS was scared of what L.M. would do to his family. LEWIS continued to deny hurting L.M. and insisted he dropped L.M. off at the house in Edmond.

22.     LEWIS made multiple inconsistent statements during the interview. These included lying about not being in a physical fight, leaving out that he and L.M. had taken mushrooms, and lying about the chair in his dorm room that belonged to L.M. LEWIS also later added in his timeline that when he returned from Edmond to Purcell, he drove around a lake. LEWIS was very hesitant to provide his cell phone for location data to show where he dropped L.M. off in Edmond.

LEWIS stated he was concerned about pictures of him and his girlfriend and pictures of his drug activity on the phone. LEWIS claimed he did not know he was the last person to see L.M., despite seeing information that L.M. was missing the same day they went to Purcell.

**Interview of MICHAEL LEWIS:**

23. On October 6, 2025, your Affiant and OSBI Special Agent Meric Mussett interviewed Michael, who provided the following:

   a. Michael confirmed that L.M. was at their home in Purcell, OK on September 12, 2025, around 1700 hours. Michael last saw LEWIS and L.M. around 1900 hours that same day, when he watched LEWIS and L.M. both go into the backyard where the trailer was parked. LEWIS and LEWIS's 17-year-old brother, B.L., lived in the trailer at the back of the property.

   b. Michael did not see L.M. after 1700 hours on September 12, 2025. Michael spoke with LEWIS around 0900 hours on September 13, 2025, and LEWIS explained that L.M. physically attacked LEWIS in the trailer, so LEWIS took L.M. to a home in Edmond, OK, in the early hours of September 13, 2025. LEWIS said that he threw L.M.'s items out of the vehicle when he dropped L.M. off.

   c. Michael described L.M. to have a backpack, skateboard, and Nintendo Switch in his possession, and was dressed in a tie-dye shirt with maroon pants with paisley print.

**Interview of LAUREN LEWIS:**

24. On October 6, 2025, your Affiant OSBI Special Agent and Meric Mussett interviewed Lauren. Lauren stated that LEWIS brought L.M. to their home in Purcell on September 12, 2025. Lauren stated she left for work at 2000 hours, leaving Michael, LEWIS, and L.M. at

their house alone. When Lauren returned from work at 0400 hours on September 13, 2025, L.M. was gone. LEWIS told Lauren that he and L.M. got into a fight, and LEWIS took L.M. to somewhere in Edmond, Oklahoma. LEWIS told Lauren that L.M. typed the Edmond address into L.M.'s phone. LEWIS then un-friended L.M. on Snapchat.

**Interview of B.L.:**

25. On October 9, 2025, OSBI Lieutenant David Gatlin interviewed B.L., who stated that LEWIS arrived to their home in Purcell, Oklahoma, with L.M. at approximately 1500 hours on September 12, 2025. LEWIS drove a beige/white Chevy Tahoe back and forth to college at SWOSU. B.L. saw that L.M. had a phone that B.L. thought to be black in color, a backpack, and a skateboard. B.L. left for work around 1525 hours and worked from 1535 hours to 2200 hours.

26. B.L. arrived back home from work shortly after 2200 hours and went to the camp trailer in the backyard. B.L. saw LEWIS and L.M. sitting on the couch/pullout bed, watching a movie. L.M. was on his phone. B.L. went to bed around 2220 hours.

27. On September 13, 2025, B.L. woke up at approximately 0947 hours and noticed that L.M. and all L.M.'s belongings were gone. LEWIS woke up at 1030 hours and B.L. asked LEWIS where L.M. was. LEWIS explained to B.L. that around 0200 hours, L.M. was playing a video game and became loud. L.M pulled the string of lights off the wall around the couch/pullout bed LEWIS and L.M. were lying on. LEWIS told L.M. that he was going to take L.M. home to Edmond. LEWIS and L.M. walked outside and began physically fighting in the grass, next to the gravel parking area.

28. LEWIS told B.L. that LEWIS laid on top of L.M. and held L.M.'s shoulders down until L.M. stopped moving. LEWIS also told B.L. that L.M. started to calm down after LEWIS punched L.M.

7

29. After the fight, LEWIS helped L.M. into the front seat of LEWIS's Chevy Tahoe, gathered L.M.'s belongings from the camp trailer and put them in the Chevy Tahoe. LEWIS told B.L. that LEWIS then took L.M. to his home in Edmond.

**CAMERON LEWIS's Cellular Telephone Records:**

30. On October 7, 2025, search warrants were obtained for LEWIS's AT&T phone records. The records, Timing Advanced records, amongst other records, were received the same day. The records showed on September 13, 2025, just after 0200 hours, LEWIS's phone was located in an area that indicated he was southbound on Interstate 35 from Purcell. The records showed that LEWIS's device path of travel continued south until he turned east near Davis, Oklahoma. At 0349 hours, LEWIS's phone was located at or near the north side of Veteran's Lake, south of Sulphur, Murray County, Oklahoma. The next Timing Advanced record was at 0422 hours, when LEWIS's device was westbound on State Highway 7 through Sulphur. The records showed that LEWIS's device returned to the Purcell area early the morning of September 13, 2025. There were no indications in the records that LEWIS's device traveled north to Edmond the morning of September 13, 2025.

31. OSBI Lieutenant DAVID GATLIN reviewed the timing advance records, and found this device was at or near the intersection of Veterans Lake Road and Veterans Lake Northshore Road, which is located on the north side of Veteran Lake, in Sulphur, Murray County, Oklahoma. On September 13 2025, at approximately 0349 hours, the device was at or very near Veteran's Lake. On September 13, 2025, at approximately 0422 hours, the device had moved away from the lake, and subsequently returned to Purcell, Oklahoma.

**Discovery of Human Remains:**

32. On the morning of October 8, 2025, OSBI Special Agents searched the area of Veteran Lake in Sulphur, Oklahoma (in the Eastern District of Oklahoma), where LEWIS's device was geo-located at 0349 hours on September 13, 2025. At approximately 0817 hours, a deceased male, now identified as L.M., was found in the woods around 300 yards from the location of LEWIS's phone location the morning of September 13, 2025. A bag was found close to the decedent that had clothes similar to the clothes that L.M. was described to be wearing last.

33. An Oklahoma Medical Examiner has conducted a preliminary examination of the decedent. The decedent was in a state of decomposition. Although the Medical Examiner initially believed the body had been burned, subsequent testing indicates the body was not burned. The Medical Examiner did not find an injury that would readily explain the cause of death. As such, the cause of death is still under investigation.

**Second Interview of CAMERON LEWIS:**

34. On October 9, 2025, OSBI Special Agent RYAN BECK conducted a second interview of LEWIS, who provided the following information:

   a. LEWIS confirmed that the story he told BECK in the first interview on October 6, 2025, was mostly true. LEWIS stated that after he and L.M. returned from taking mushrooms in Norman, Oklahoma, L.M. started playing a video game. The nature of the game was one that LEWIS did not think was smart to play while on mushrooms because of the fright-inducing aspect of the game.

   b. While playing the game, L.M. suddenly jumped up and started acting erratic. L.M. started ripping down the lights in the trailer. LEWIS and L.M. began to fight in the trailer and the fight moved to the outside of the trailer. While they fought, L.M. fell

to the ground and struck his head on a rock. LEWIS thought that L.M. was just unconscious.

  c.  LEWIS pulled L.M. up by his arms and helped him into the front seat of the **Subject Vehicle.** LEWIS stated that he drove around in the **Subject Vehicle** with L.M. thinking that he would eventually wake up. L.M. fluttered his eyes and leaned his head up against the passenger window of the **Subject Vehicle.**

  d.  When L.M. did not regain consciousness, LEWIS began to get very scared. LEWIS drove the **Subject Vehicle** down to Veteran Lake in Sulphur, Oklahoma (in the Eastern District of Oklahoma). When LEWIS pulled L.M. out of the car, LEWIS heard L.M. take his final breath. LEWIS dragged L.M. into the woods and then dumped L.M.'s clothes near his body. LEWIS then dropped L.M's phone into the lake.

## IN CONCLUSION

35. Based upon the above-described information, I submit the evidence supports the following conclusions: that LEWIS, Michael, and Lauren confirmed L.M. traveled in **Subject Vehicle** with LEWIS to LEWIS's house located at 417 W. Van Buren St. in Purcell, OK; that L.M. died during a physical altercation that occurred between LEWIS and L.M.; that LEWIS transported L.M. to the area of Veteran's Lake in the **Subject Vehicle**; that LEWIS was at or in the area of Veterans Lake on September 13, 2025, between 0349 hours and 0422 hours; and that law enforcement's search of LEWIS's cell records placed LEWIS's device in the same area that L.M.'s deceased body was located and then left the area.

## AUTHORIZATION REQUEST

36. Based on the above information, there is probable cause to believe that the foregoing laws have been violated, and that the following property, evidence, fruits, and instrumentalities of these offenses are located in the **Subject Vehicle.**

37. Based upon the foregoing, I respectfully request that this Court issue a search warrant for the **Subject Vehicle**, described in Attachment A, authorizing the seizure of the items described in Attachment B to this Affidavit.

Respectfully submitted,

*[signature]*
Valoree Martinez, Special Agent
Oklahoma State Bureau of Investigation

Subscribed and sworn to before me on October ___14___, 2025.

*[signature]*
CHRIS M. STEPHENS
UNITED STATES MAGISTRATE JUDGE
WESTERN DISTRICT OF OKLAHOMA

## ATTACHMENT A

### Property to be Searched

The **Subject Vehicle** is a white 2004 Chevrolet Tahoe bearing Chickasaw Nation license plate CN57438 and Vehicle Identification Number 1GNEK13T64J198635. The **Subject Vehicle** is owned by LAUREN LEWIS.



The above photograph is of the **Subject Vehicle**.

The **Subject Vehicle** is further described as having a blue, gray, and white decal with the letters "SWOSU" and a cartoon drawing of a bulldog on the front windshield, in the bottom corner of the driver side. On the front, driver's side between the front headlight and the driver's side front wheel well is a deep dent. The **Subject Vehicle** is located in the #4 sally port the northwest side of a property commonly known as "615 East Franklin Avenue, Weatherford, Oklahoma," in the Western District of Oklahoma. 615 East Franklin Avenue is red colored brick façade with white colored trim. The front of the building faces south and has a large glass entryway located on the front. On the front facing side of the building are silver letters that spell "Weatherford Police

12

Department." On the west-facing side are gray overhead doors that enter into the sally port. Directions to the building are described from the intersection of East Proctor Avenue and North Washington Street in Weatherford, Oklahoma. From the intersection of East Proctor Avenue and North Washington Street, travel west on East Proctor Avenue for approximately 0.3 miles. Then, travel south on North Kansas Street for approximately 0.2 miles. Then travel west on East Franklin Avenue for approximately 165 feet. The entrance to the building is the first driveway, north of East Franklin Avenue. The area to be searched includes the **Subject Vehicle**.

## ATTACHMENT B

### Particular Things to be Seized

All evidence, fruits, and instrumentalities of violations of Title 18, United States Code, Sections 1153 and 1111 (Murder); Title 18, United States Code, Sections 1153 and 1112 (Manslaughter); and/or Title 18, United States Code, Section 1152 and Title 21, Oklahoma Statutes, Section 1161 (Unauthorized Removal of a Dead Body), including but not limited to:

1. Weapons capable of causing the death of L.M.
2. Cellular telephones reasonably believed to belong to L.M. or those reasonably believed to be using telephone number (405) 836-1392 (identified as L.M.'s cellular telephone number).
3. Biological evidence such as: blood and other physiological fluids, hair and fibers, fingerprints, footprints and other impressions.
4. Clothing reasonably believed to belong to L.M.
5. Written material and correspondence containing names, addresses and phone numbers of CAMERON LEWIS or L.M.
6. Property reasonably believed to belong to L.M., such as the skateboard, Nintendo switch device, computer keyboard, black plastic tote, and white drawstring bag of clothes that L.M. had when he was last seen alive.
7. Items establishing dominion and control such as mail and utility bills indicating the names of individuals who possess or control the **Subject Vehicle**.
8. Crime Scene photographs of the exterior and interior of the **Subject Vehicle**.